UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In Re: KMC REAL ESTATE INVESTORS, LLC Debtor, | ) ) ) | |
| In Re: KENTUCKIANA MEDICAL CENTER, LLC Debtor - Consolidated Party re 4:13-cv-181-SEB-WGH, | ) ) ) ) ) | 4:13-cv-00179-SEB-WGH |
| ABDUL G. BURIDI, | ) ) | |
| Appellants, | ) ) | |
| vs. | ) ) | |
| KMC REAL ESTATE INVESTORS, LLC, KENTUCKIANA MEDICAL CENTER, LLC Consolidated Party re 4:13-cv-181-SEB-WGH, | ) ) ) ) ) | |
| Appellees. | ) | |

**ORDER DENYING APPELLEES' MOTIONS TO DISMISS APPEAL**

This cause is before the Court on appeal from the September 11, 2013 decision of the United States Bankruptcy Court for the Southern District of Indiana, confirming the Third Amended Plan of Reorganization that was filed by Appellee KMC Real Estate Investors, LLC ("KMCREI") and the September 12, 2013 decision of the Bankruptcy Court confirming the Third Amended Plan of Reorganization that was filed by Appellee Kentuckiana Medical Center, LLC ("KMC"). Appellant Abdul G. Buridi, M.D., filed his appeal of the Bankruptcy Court's decisions on November 5, 2013. KMC and KMCREI each filed a Motion to Dismiss Appeal on November 22, 2013 [Docket No. 33] and

1

November 25, 2013 [Docket No. 14], respectively, arguing that we should not reach the merits of Dr. Buridi's appeal because the plans at issue have been substantially consummated, rendering his appeals moot. Dr. Buridi's two bankruptcy appeals were ordered consolidated before Magistrate Judge Hussmann effective February 19, 2014. Appellees' motions to dismiss are now fully briefed and ripe for ruling. For the reasons detailed below, we <u>DENY</u> Appellees' Motion to Dismiss.

## **Factual Background**

KMC, an entity affiliated with KMCREI, was formed by Cardiovascular Hospitals of America, LLC and Kentuckiana Investors, LLC ("KI") to operate a for-profit, physician-owned acute care hospital located in Clarksville, Indiana. KI's membership interests were held by approximately thirty (30) physicians who practice in the greater Louisville, Kentucky, area, including Dr. Buridi. However, KMC's hospital facility failed when construction loan proceeds and working capital were exhausted before the facility was completed.

As a result, on September 9, 2010, KMC voluntarily commenced its Chapter 11 bankruptcy case (the "KMC Bankruptcy"). Prior to commencement of the KMC Bankruptcy, KMC was in default on its debt obligations to its primary secured lender and was unable to make payment to a number of trade creditors. At the time of its bankruptcy filing, KMC owed liabilities in excess of $25 million.

Following the commencement of the KMC Bankruptcy, KMC continued to struggle financially. Only a small number of the physician-owners of KI were regularly admitting patients to the hospital and KMC never reached its projected revenues.

2

According to Appellees, it became clear that in order for the hospital to attain sustainability, KMC would require one or more investments of several million dollars. Knowing this, KMC's management and other constituents aggressively pursued new investors.

While the KMC Bankruptcy was pending, a foreclosure proceeding was initiated against KMCREI in Clark County, Indiana. KMCREI was at that time in default on its $21 million construction loan held by RL BB Financial, LLC ("RLBB"). KMCREI owned the real estate and improvements on which KMC operated. On April 1, 2011, KMCREI filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "KMCREI Bankruptcy") to obtain a stay of the foreclosure proceedings.

In June 2012, KMC and KMCREI first obtained confirmation of their respective plans of reorganization, but the original plans were never consummated. Both bankruptcy cases remained pending and upon commencement of the KMCREI bankruptcy, investors began to evaluate KMC and KMCREI as a packaged investment opportunity. During this time, KMC and KMCREI continued their efforts to solicit new investments to fund their reorganizations, but as a result of their inability to consummate their confirmed plans, KMS's post-petition debts continued to accrue through the hospital's normal business operations.

Approximately one year later, in June 2013, an RLBB affiliate (the "Exit Investor") agreed to finance the debtors' exit from Chapter 11 and new plans of reorganization were proposed. KMC's Third Amended Plan of Reorganization (the "KMC Plan"), among other cash outlays, called for the Exit Investor to provide funds

necessary to satisfy nearly $6 million of post-petition administrative priority claims against KMC.  KMCREI's Third Amended Plan of Reorganization (the "KMCREI Plan") provided for the restructuring of RLBB's $21 million secured loan and cash payment of $538,573.79 to Clark County, Indiana, to satisfy past due real estate taxes.  On September 11, 2013, the Bankruptcy Court entered the Amended Order Confirming Third Amended Plan of Reorganization in the KMCREI bankruptcy (the "KMCREI Confirmation Order").  The next day, on September 12, 2013, the Bankruptcy Court entered the Second Amended Order Confirming Third Amended Plan of Reorganization as Immaterially Modified in the KMC bankruptcy (the "KMC Confirmation Order").

Under the plans of reorganization, which were accepted by all classes of creditors entitled to vote, the two debtors were to be recapitalized, the hospital completed, the over $31 million secured debt paid in full, the $6 million administrative claims also paid in full, and unsecured creditors to receive a material dividend.  Dr. Buridi and three other doctors with KI membership interests objected to these Plans based on their concern that certain distributions of equity set forth in the Plans to four particular doctors who provided services or referrals to the hospital operated by KMC were not compliant with federal healthcare laws applicable to doctor-owned hospitals.  In order to address Dr. Buridi's concern, the Bankruptcy Court issued amended confirmation orders which required that implementation and consummation of the Plans comply with all applicable health care laws and regulations and directed that in the event that the Exit Investor determined that the proposed distributions to the particular doctors in question would

violate applicable federal laws and regulations, those distributions would be modified or eliminated to the extent necessary to be in full compliance.

Despite the addition of this provision intended to address his concerns, Dr. Buridi appealed the KMCREI Confirmation Order on September 25, 2013 as well as the KMC Confirmation Order on September 26, 2013, challenging the equity distribution to the four doctors referenced above as well as an injunction issued pursuant to the Plans protecting equity holders of KMCREI. He did not seek a stay of either Confirmation Order from the Bankruptcy Court or this Court and no supersedeas bond has been posted. Despite these appeals, KMC, KMCREI, and the Exit Investor waived the conditions to the Effective Date of the plans in accordance with the Confirmation Orders, and began making plan distributions on November 7, 2013.

Between entry of the Confirmation Orders and November 7, 2013, the Exit Investor contributed funds that allowed KMC and KMCREI to perform the following obligations imposed by the Confirmation Orders: (1) make $1,505,896.01 in cash payments to holders of administrative claims against KMC; (2) issue promissory notes totally $13,243,191.00 to holders of secured claims and administrative claims against KMC; (3) pay $752,292.13 to Clark County, Indiana, to satisfy taxes owed by KMC and KMCREI; (4) pay $250,000.00 cash to holders of secured claims against KMC; (5) reserve $500,000.00 to satisfy the claims of holders of general unsecured claims against KMC; and (6) purchase over $100,000.00 of equipment for the hospital. The Exit Investor also provided nearly $1 million of additional capital into KMC to facilitate completion of the hospital. Since the reorganization began, KMC has entered into an

emergency room contract with EmCare, a management agreement with Galichia Hospital Group, LLC, as well as approximately $2.6 million worth of contracts to complete and furnish an approved 12-bed telemetry unit. A new chief executive officer of the hospital has also been retained to manage reorganized KMC. A new management group identified in the KMC Plan, Galichia Hospital Group, LLC, has assumed management of KMC's property and business operations. Additionally, one hundred percent of the equity in the reorganized KMC and KMCREI is now owned by the Exit Investor.

KMC and KMCREI moved to dismiss Dr. Buridi's appeals on November 22, 2013 and November 25, 2013, respectively, arguing that Dr. Buridi's appeal is moot because the reorganization plans have been substantially completed. Dr. Buridi's appeals were consolidated on February 19, 2014.

## **Legal Analysis**

Appellees have moved to dismiss Dr. Buridi's appeal on the grounds that the KMC and KMCREI Plans have been substantially consummated and thus "it would be imprudent and impractical for the Court to order the undoing of the reorganization at this time." Dkt. No. 15 at 6. The Seventh Circuit recognizes that "a plan of reorganization, once implemented, should be disturbed only for compelling reasons." *Matter of UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) (citations omitted). "If a bankruptcy plan has been substantially consummated in the intervening time between confirmation and an appeal, the equitable principles of bankruptcy counsel a court against disturbing a

partially implemented plan." *Bertram Comm., LLC v. Netwurx, Inc.*, No. 09-CV-1037, 2010 WL 605333, at *1 (E.D. Wis. Feb. 18, 2010) (citing *id.*).

Substantial consummation of the reorganization plan is not dispositive, however. *In re Andreuccetti*, 975 F.2d 413, 418 (7th Cir. 1992). In applying the mootness standard in the context of reorganizations, courts may consider several factors including "the virtues of finality, the passage of time, whether the plan has been implemented and whether it has been substantially consummated, and whether there has been a comprehensive change in circumstances." *Matter of Specialty Equip. Co., Inc.*, 3 F.3d 1043, 1048 (7th Cir. 1993) (quotation marks and citation omitted). District courts may also consider whether the appellant has sought a stay, the nature of the relief sought, and the impact of the relief upon the debtor and third parties. *Id.* "Ultimately, 'the basic question' the court must ask is whether it is 'prudent and fair to undo what the bankruptcy court did.'" *Bertram*, 2010 WL 605333 at *1 (quoting *Capital Factors, Inc. v. Kmart Corp.*, No. 02-CV-1264, 2003 WL 22282518, at *4 (N.D. Ill. Sep. 29, 2003)).

Here, Dr. Buridi did not seek a stay of the confirmation orders from either the Bankruptcy Court or this Court. Although requesting a stay is not a mandatory prerequisite to filing an appeal, the significance of such a request "lies in the opportunity it affords to hold things in stasis, to prevent reliance on the plan of reorganization while the appeal proceeds." *Matter of UNR Indus.*, 20 F.3d at 769-70. "[A] party that elects not to pursue a stay subsequent to confirmation risks that a speedy implementation of the reorganization will moot an appeal." *Matter of Specialty Equip. Co., Inc.*, 3 F.3d 1043,

1047 (7th Cir. 1993) (citation omitted). In the case at bar, the failure to seek a stay has resulted in the implementation and substantial consummation of the Confirmation Plans.

In this context, "substantial consummation" means "transfer of all or substantially all of the property proposed by the plan to be transferred"; assumption by the reorganized entity of the business or the management of the property addressed by the plan; and the commencement of distribution under the plan. 11 U.S.C. § 1101(2). Since entry of the Confirmation Orders, one hundred percent of the equity in the reorganized KMC and KMCREI is now owned by the Exit Investor and KMC has assumed its business operations as the reorganized debtor and is now managed by Galichia Hospital Group, LLC. The Exit Investor has infused new capital into KMC, which has, in turn, distributed cash and promissory notes to holders of administrative and secured claims. In addition, all property to be distributed under the KMCREI Plan has been transferred in the form of either cash or promissory notes that have been delivered to holders of claims entitled to distribution under the KMCREI Confirmation Order. Accordingly, we find that these Plans have been substantially consummated.

However, as noted above, the substantial consummation of a reorganization plan does not necessarily moot an appeal. Rather, we must consider the circumstances of the case to determine whether we can grant effective relief; specifically, whether we can fashion the prayed-for relief without unduly burdening third parties or unraveling the reorganization plans. Here, Dr. Buridi contends that because he is seeking very narrow relief, to wit, an adjustment to the distribution of equity under the KMCREI Plan and

modification of the injunction in the KMC Confirmation Order,[1] the Court would be able to fashion an appropriate remedy responsive to his objections without, in the words of Judge Easterbrook, having to "unscramble an egg." *Matter of UNR Indus.*, 20 F.3d at 769. Dr. Buridi contends that his appeal of the equity distribution, if successful, would disturb only funds that have not yet been distributed under the KMCREI Plan and would affect only parties in interest, no third parties. Dr. Buridi further maintains that the modification he seeks of the injunction would not be inequitable to any other Plan participants because the portion of the injunction he seeks to have deleted selectively protects only the equity holders of KMCREI, and thus, would have no effect on third parties.

At this juncture Appellees have failed to offset Dr. Buridi's description of his claims. They have not shown that overturning the reorganization plans would functionally impact anything beyond the re-allocation of money among insiders or parties in interest. KMCREI argues that any redistribution of its post-confirmation equity "inequitably decreases the value of the Exit Investor's investment and exposes creditors of both KMC and KMCREI to an increased risk of post-confirmation defaults." Dkt. 19 at 3. However, KMCREI does not explain why this is the case or provide any evidentiary support for its argument. In a similarly perfunctory fashion, KMC argues only that the presence and scope of the injunction was a material element of the Exit Investor's

---

[1] Dr. Buridi does not seek to avoid payments already made to administrative claims or toward the purchase of new equipment. Nor is he contesting the validity of any payments to innocent third parties or seeking to affect the management agreement with Galichia Hospital Group.

commitment to fund consummation of the KMC Plan, and thus, that any modification of the injunction could jeopardize the Exit Investor's continued commitment to rehabilitation of the hospital. In the final analysis, it is not clear from the record before us that such eventualities are likely to occur and we cannot rely solely on Appellees' conclusory predictions or opinions in dismissing Dr. Buridi's claims. The relief sought by Dr. Buridi would not, by all appearances, threaten to undo transactions involving innocent third parties that have already occurred nor would it otherwise undermine the foundation of either reorganization plan. Accordingly, Appellees' motions to dismiss are <u>DENIED</u>.[2]

    IT IS SO ORDERED.

Date: _____9/29/2014_____       *[signature]*
                                                                  SARAH EVANS BARKER, JUDGE
                                                                   United States District Court
                                                                   Southern District of Indiana

---

[2] This ruling clearly has no bearing on the merits of Dr. Buridi's appeal. We do note, however, that while the exact contours of the relief Dr. Buridi seeks are not yet clear, we have some reservations given that at least part of what he is apparently seeking is a ruling on the propriety of equitable distributions that have not yet occurred (and may never occur). We trust that these issues will be fully developed in the parties' briefing on the underlying appeal, but we remind Dr. Buridi that the Court does not render advisory opinions.

Distribution:

Laura A. DuVall
OFFICE OF THE U.S. TRUSTEE
101 West Ohio Street
Suite 1000
Indianapolis, IN 46204

Miles S. Apple
PITT & FRANK PSC
milesapple@att.net

David Marcus Cantor
SEILLER WALTERMAN LLC
cantor@derbycitylaw.com

Neil C. Bordy
SEILLER WALTERMAN LLC
bordy@derbycitylaw.com

Tyler R. Yeager
SEILLER WATERMAN LLC
yeager@derbycitylaw.com

David Ralph Krebs
TUCKER HESTER BAKER & KREBS, LLC
dkrebs@thbklaw.com

Bradley J. Buchheit
TUCKER, HESTER, BAKER & KREBS
bbuchheit@thbklaw.com

Courtney E. Chilcote
TUCKER, HESTER, BAKER & KREBS
cchilcote@thbklaw.com