UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| KMC REAL ESTATE INVESTORS, LLC Debtor, KENTUCKIANA MEDICAL CENTER, LLC Debtor - Consolidated Party re 4:13-cv-181-SEB-WGH, _____ | ) ) ) ) ) ) | 4:13-cv-00179-SEB-WGH |
| In Re: KMC REAL ESTATE INVESTORS, LLC Debtor, | ) ) ) | |
| In Re: KENTUCKIANA MEDICAL CENTER, LLC Debtor - Consolidated Party re 4:13-cv-181-SEB-WGH, | ) ) ) ) | |
| ABDUL G. BURIDI, Appellant, | ) ) ) | |
| vs. | ) ) | |
| KMC REAL ESTATE INVESTORS, LLC, *et al.* Appellees. _____ | ) ) ) ) ) | |
| NANCY J. GARGULA U.S. Trustee, Trustee. | ) ) ) | |

**ORDER ON BANKRUPTCY APPEAL**

Appellant Abdul G. Buridi appeals the Bankruptcy Court's approval of the final

confirmation orders entered in the chapter 11 cases of debtors KMC Real Estate

Investors, LLC ("KMC") and its affiliate Kentuckiana Medical Center, LLC

("Kentuckiana"). For the following reasons, the Bankruptcy Court's approval of the confirmation orders is <u>AFFIRMED</u>.

**Factual Background**

**General Background**

Between 2005 and 2007, Cardiovascular Hospitals of America, LLC ("CHA") and Kentuckiana Investors, LLC ("KI") formed KMC to develop and operate a new hospital facility in Clarksville, Indiana. CHA and KI each owned 49% of KMC and the membership interests of KI were held by approximately thirty (30) physicians who practiced in the greater Louisville, Kentucky, area, including Dr. Buridi. In order to obtain financing for the KMC project, CHA, KI, and the physician-members of KI guaranteed various loans and other financial obligations of KMC to lenders and equipment providers. Unfortunately, KMC immediately encountered financial difficulties when its construction loan proceeds and working capital were exhausted before the hospital was completed and stabilized.

Concurrently with the formation of KMC, many of the physician-members of KI invested in and acquired membership interests in KMCREI, which purchased the real estate and financed construction of the hospital facility through a $21 million loan from Branch Banking & Trust Company ("BB&T"). There was no requirement that the physician-members of KI acquire membership interests in KMCREI, however. KMCREI's membership interests were divided proportionately, not equally, among the physicians who did choose to invest. Dr. Buridi owned a 1.03% membership interest in KI and a 1.65% membership interest in KMCREI. As owner of the hospital building,

KMCREI depended entirely on its sole tenant, KMC, for its revenues, and therefore when KMC encountered financial issues, KMCREI also suffered.

**Chapter 11 Filings**

On September 19, 2010, KMC filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code and KMCREI similarly filed under chapter 11 on April 1, 2011. Although both debtors continued to lose significant amounts of money after their bankruptcy cases were filed, they managed to reach tenuous agreements with several key creditors that enabled them to continue operating.

From the outset of KMC's bankruptcy, it became clear that the only way in which the hospital could become financially viable would be through a cash infusion of millions of dollars to complete construction of the hospital and purchase required equipment. In June 2012, KMC and KMCREI each obtained confirmation of their respective plans of reorganization but were unable to consummate the plans when their investor refused to fund the reorganization. Instead, both debtors remained in Bankruptcy Court and continued to solicit new investments while continuing to accrue substantial post-petition liabilities through normal business operations. By June 2013, KMC and KMCREI carried a combined debt load of more than $31 million in secured claims, $6 million in post-petition administrative claims, and $5 million in unsecured claims.

**The Confirmed Plans of Reorganization**

Prior to commencement of KMCREI's chapter 11 case, RL BB Financial, LLC ("RLBB")[1] acquired the KMCREI construction loan originally advanced by BB&T. After KMC's and KMCREI's failures to consummate their original plans of reorganization, they engaged in extensive negotiations with RLBB in the months prior to June 2013 to develop the framework for each debtor's Third Amended Plan of Reorganization. The KMC Plan called for RLBB or its affiliate, as "Exit Investor," to provide approximately $10 million to complete the hospital and pay claims against KMC. The KMCREI Plan provided for the restructuring of RLBB's $20 million secured loan and cash payments to satisfy past due real estate taxes.

Under the KMC Plan, KMC's secured liabilities were significantly restructured, holders of administrative claims received 20% of their claims in cash and notes payable over five years, and holders of unsecured claims received cash payments equal to their pro rata share of a $500,000 pool of funds, in most cases equal to a fraction of their overall indebtedness. All pre-confirmation equity membership interests in KMC were cancelled on the effective date of the KMC Plan, and the Exit Investor acquired 100% of the new membership interests in KMC.

Under the KMCREI Plan, only the secured claims owed to RLBB and the real estate tax lienholder were to be satisfied through distribution of money or property. All unsecured claims against KMCREI were to be discharged pursuant to 11 U.S.C. § 1141(d), and all membership interests in KMCREI were cancelled. The KMCREI Plan

[1] RLBB is often referred to as "Rialto" in Bankruptcy Court pleadings and transcripts in the record on appeal.

4

originally provided that 80% of the new membership interests in reorganized KMCREI would be issued to the Exit Investor while the remaining 20% of the new membership interests were to be issued to Drs. Christodulos Stavens, Eli Hallal, Jeffrey Campbell, and Renato LaRocca, four of the physician-owners of KI "in consideration of their ongoing commitment to the hospital and importance to the feasibility of [the KMCREI Plan] and the KMC Plan." Dkt. No. 2 at 8. These four physicians comprised the KI contingent on KMC's board of managers (the remaining board members consisted of representatives of CHA). Dr. Stavens served as KMC's Chief Executive Officer as well as the manager of KI. These four physicians were also responsible for admitting 70-80% of all patients to the hospital during the time period relevant to this litigation.[2]

Drs. Stavens, Hallal, and Campbell asserted Allowed Administrative Claims pursuant to 11 U.S.C. § 503(b)(1)(A) for salary and on-call services earned but not paid during the KMC bankruptcy case. Dr. LaRocca acquired an Allowed Secured Claim against KMC by assignment, which enabled KMC to retain operating room and anesthesiology equipment for its continued operations during the bankruptcy case. According to KMC, the 20% distribution of KMCREI's equity interests was in

---

[2] When KMC was formed, it was anticipated that the physician-owners of KI would increase KMC's value through regular admission of patients to the hospital for surgeries, exams, and other necessary procedures. However, the physician-owners of KI admitted patients to varying degrees. Dr. Buridi, for example, did not admit any patients to the hospital and, according to Appellees, did not otherwise contribute any time or services throughout the pendency of the Chapter 11 Cases. Dr. Buridi rejoins that while he may not have referred patients to the hospital, he, along with other equity members of KI, contributed in other ways, namely through judgment liens, wage garnishments, and other judgment enforcement actions, all arising from their guaranty of the debt of KMC and KMCREI.

consideration of the four physicians' compromise of their respective Allowed

Administrative Claims against KMC.

As described below, however, the Bankruptcy Court ultimately ordered that the

20% that was to go to Drs. Stavens, Hallal, Campbell, and LaRocca could not be

transferred if that transfer would violate applicable federal healthcare laws.  In that case,

RLBB would hold 100% of the new equity in the reorganized KMCREI following

confirmation of the plan.

**Appellant's Objections to Confirmation**

On July 26, 2013, Dr. Buridi, among others, filed objections to confirmation of the

KMC and KMCREI Plans ("the Plan Objections").  The Plan Objections raised four

arguments in opposition to confirmation of the plans: (1) that the proposed distribution of

20% of the equity interests in KMCREI to Drs. Stavens, Hallal, Campbell, and LaRocca

violated 11 U.S.C. § 1129(b)(2)(B)(ii), the so-called "absolute priority rule"; (2) that the

plans unfairly discriminated against Dr. Buridi's subrogation claim arising from amounts

collected pursuant to his personal guaranty; (3) that the KMC Plan was filed in bad faith

because a secured creditor of KMC with personal guaranties filed a collection suit against

Dr. Buridi and several other doctors; and (4) that the plan did not satisfy 11 U.S.C. §

1129(a)(11) because it was likely to be followed by liquidation or further financial

reorganization.

**Amendment to KMC Plan**

The proposed KMC Plan included an injunction intended to prevent creditors from

pursuing claims against KMC and its property or any guarantor or co-obligor of KMC

and their property. As a personal guarantor, Dr. Buridi falls within the injunction's

protection. At the hearing on the disclosure statement, Dr. Buridi had requested

clarification about the injunction and its effect on two state court cases he had filed

against third-party non-debtors, including Drs. Stavens and Hallal. At that hearing,

KMC's counsel stated that the injunction was unrelated to Dr. Buridi's state court claims

and would not prevent him from pursuing those lawsuits. With this assurance, Dr. Buridi

did not pursue his objection of the original injunction.

On July 29, 2013, the day before the Confirmation Hearing was scheduled to

occur, KMC filed an amendment to the KMC Plan that altered the injunction.

Specifically, the following language was added to the end of the injunction:

> Notwithstanding anything in this Confirmation Order and in Article XI of
> the Plan to the contrary, in the event that any guarantor or any co-obligor of
> the Debtor either (a) becomes a debtor under title 11 of the U.S. code or (b)
> commences or continues any action against the Debtor, KMCREI, or any
> equity holder in the reorganized Debtor or KMCREI, then the injunctions
> set forth in this Confirmation order shall automatically terminate and shall
> not apply to such guarantor or such co-obligor and/or their property.

Dkt. 4-33 at 16.

**Confirmation Hearing**

On July 30, 2013, the confirmation hearing was held at which both the KMC Plan

and the KMCREI Plan were considered simultaneously. In addition to the Plan

Objections already detailed, Dr. Buridi raised two oral objections to confirmation. First,

he argued that the amended language of the injunction targeted him and was designed to

prevent his state court action against Drs. Stavens and Hallal. Specifically, Dr. Buridi

contended that in contradiction to KMC's representations at the disclosure hearing, the

amended language would render him vulnerable to creditor lawsuits if he chose to continue pursuing his state court action against Drs. Stavens and Hallal, given that they would be KMCREI equity holders following reorganization. The second oral objection put forth by Dr. Buridi was based on his concern that the award of a 20% equity distribution in KMCREI to Drs. Stavens, Hallal, Campbell, and LaRocca in order to satisfy claims of KMC circumvented the federal "Stark Laws" set forth in 42 U.S.C. § 1395, a series of statutes governing physician self-referral for Medicare and Medicaid patients.

The Bankruptcy Court expressed concern regarding Dr. Buridi's objection based on possible violations of healthcare law, but ultimately overruled the Plan Objections and entered orders confirming both the KMC Plan and the KMCREI Plan on August 19, 2013.

**Appellant's Rule 9023 Motions**

On September 2, 2013, Dr. Buridi and others filed a motion to alter, amend, or vacate the confirmation orders, pursuant to Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59 ("the Rule 9023 Motions"). In the Rule 9023 Motions, Dr. Buridi again argued that the respective confirmed plans and confirmation orders were potentially violative of federal healthcare laws. The Bankruptcy Court held a hearing on the Rule 9023 Motions at which the court granted Dr. Buridi's motions, and adopted the following language suggested by counsel for RLBB in an attempt to address Dr. Buridi's concerns:

> Compliance with Applicable Non-Bankruptcy Health Care Laws.
> Notwithstanding anything in the KMCREI Plan or KMC Plan to the
> contrary, and for the purposes of clarification and to resolve the Rule 9023
> Motion, the Plans shall be deemed construed and deemed amended, as
> necessary, to provide as follows: (a) implementation of the Plans and all
> transactions necessary to consummate the Plans including, without
> limitation, distributions of equity or other property to doctors that provide
> services and/or referrals to the KMC hospital, shall comply with all
> applicable health care laws and regulations including, without limitation,
> the anti-kickback and so-called "Stark Laws" found in Title 42 of the U.S.
> Code ("the Applicable Healthcare Laws"); (b) Section 8.4 of the KMCREI
> Plan and Section 9.04 of the KMC Plan are amended to add, as a condition
> precedent to the Effective Date, that the Exit Investor is satisfied that
> implementation of the Plans will comply with Applicable Health Care
> Laws; and (c) in the event that the proposed distributions to Drs. Stevens,
> Hallal, Campbell, and/or LaRocca, or the proposed treatment of the
> administrative claims held by such doctors, is determined by the Exit
> Investors to violate or risk violating the Applicable Health Care Laws, the
> distribution and/or treatment of such claims shall be modified or eliminated
> to the extent necessary to ensure full compliance with the Applicable
> Health Care Laws.

Dkt. No. 2-29 at 6-7; Dkt. No. 4-29 at 17-18.

On September 11, 2013, the Bankruptcy Court entered amended confirmation

orders containing this language.

**Consummation of the Plans**

Although the Rule 9023 Motions were granted, Dr. Buridi subsequently appealed

entry of both the KMCREI and KMC Confirmation Orders. However, he did not seek a

stay of either Confirmation Order from the Bankruptcy Court or this Court, and did not

post a supersedeas bond. Despite Mr. Buridi's appeals, KMC, KMCREI, and the Exit

Investor elected to waive conditions to the effective dates of each plan in accordance with

the Confirmation Orders, and began making plan distributions on November 7, 2013.

9

The Exit Investor contributed more than $10 million in cash to enable KMC and KMCREI to comply with the Confirmation Orders and to improve KMC's ability to generate revenue. In addition to the cash infusion required by the Confirmation Orders, the Exit Investor contributed more funds to cover KMC operating shortfalls during its transition out of bankruptcy. During this time period, KMC also entered into post-confirmation contracts with new venders, a management agreement with Galichia Hospital Group, LLC, and retained a new chief operating officer. Also in accordance with the Confirmation Orders, all of the pre-confirmation equity interests in KMC and KMCREI were extinguished and the Exit Investor acquired, and presently owns, 100% of the membership interests in both reorganized KMC and reorganized KMCREI.

**The Instant Litigation**

Dr. Buridi filed notices of appeal from the confirmation orders on September 25, 2013. KMC and KMCREI each filed motions to dismiss in their respective cases. On February 14, 2014, the court consolidated Dr. Buridi's appeals of the KMCREI and KMC Plans. Both KMC's and KMCREI's motions to dismiss were denied by this Court on September 29, 2014, based on the narrow relief Dr. Buridi was seeking. Dr. Buridi's bankruptcy appeal is now fully briefed and ripe for ruling.

## Legal Analysis

### I.      Standard of Review

This Court has power to review the final judgment of the United States Bankruptcy Court for the Southern District of Indiana pursuant to 28 U.S.C. § 158(a)(1).

We review the legal conclusions reached by the Bankruptcy Court *de novo*. *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010); *In re Midway Airlines, Inc.*, 69 F.3d 792, 795 (7th Cir. 1995). The Bankruptcy Court's findings of fact are reviewed for clear error. *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998).

## II.    Objections as to both the KMC and KMCREI

The majority of Dr. Buridi's arguments on appeal are identical as to the KMC and the KMCREI Plans, and thus, we address them together. Plan-specific objections are addressed separately below.

### A.    Improper Delegation of Judicial Authority

Dr. Buridi first argues that by amending the KMC and KMCREI Plans to address his Rule 9023 motion by including the language set forth in Paragraph 4 of the Final KMC Confirmation Order and Paragraph 5 of the Final KMCREI Confirmation Order, the Bankruptcy Court ceded its authority to the Exit Investor to determine whether distribution of equity to the four physicians would violate federal healthcare laws, which he contends constitutes an unconstitutional delegation of judicial authority. In support of his argument, Dr. Buridi relies primarily on the decision of the United States Supreme Court in *Whitman v. American Trucking Associations*, 531 U.S. 457 (2001). Quoting *Whitman*, Dr. Buridi argues that the Constitution's text permits "no delegation" of powers and that a government department may authorize an individual or body to act on its behalf only by designating "'an intelligible principle to which the person or body authorized to act is directed to conform.'" *Id.* at 472 (citations and quotation marks

11

omitted). However, the caselaw relied upon by Dr. Buridi addresses an unrelated body of law, to wit, the constitutional principles underlying the nondelegation of *legislative* authority only; he has failed to point us to (nor has our research revealed) relevant caselaw that would support the application of such principles to the situation at hand. Accordingly, we find that Dr. Buridi has failed to raise a cognizable constitutional claim based on the Bankruptcy Court's inclusion of Paragraph 4 in the KMCREI Plan and Paragraph 5 in the KMC Plan.

Even if Dr. Buridi could establish that constitutional nondelegation principles are applicable to the judiciary in the manner he contends, he has failed to present any authority for the proposition that before confirming a plan, the bankruptcy court is required to determine whether potential future actions of a reorganized debtor might subject it to civil or criminal penalties for violations of non-bankruptcy law such that it could be said to have improperly delegated its judicial authority through the inclusion of Paragraph 4 in the KMCREI Plan and Paragraph 5 in the KMC Plan.

For example, in his Rule 9023 motion, Dr. Buridi did not make a constitutional argument, but instead argued that the 20% equity distribution violated the Stark Laws and thus was in violation of 11 U.S.C. § 1129(a)(3), which requires a bankruptcy court to determine before confirming a plan of reorganization, that the plan was "proposed in good faith and not by any means forbidden by law." *Id.* But courts addressing the issue have "uniformly held" that this provision "does not require that the contents of a plan 'comply in all respects with the provisions of all nonbankruptcy laws and regulations.'"

*In re Gen. Dev. Corp.*, 135 B.R. 1002, 1007 (Bankr. S.D. Fla. 1991) (quoting *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 59 (Bankr. S.D.N.Y. 1990); *In re Food City, Inc.*, 110 B.R. 808, 812-13 (Bankr. W.D. Tex. 1990)).

Rather, "Section 1129(a)(3) requires only that the *plan's proposal*, as opposed to the contents of the plan, be in good faith and in compliance with all nonbankruptcy laws." 135 B.R. at 1007 (citing 111 B.R. at 59-60; 110 B.R. at 811) (emphasis in original). Thus, "[b]ecause only the proposal of the plan must not be by a means forbidden by law, plans proposing terms that arguably violate some statute or common law doctrine have passed muster under Section 1129(a)(3)." Richard M. Cieri, Barbara J. Oyer, and Dorothy J. Birnbryer, *"The Long and Winding Road": The Standards to Confirm a Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (Part I)*, 3 J. BANKR. L. & PRAC. 3 Nov.–Dec. 1993, at 39-40 (citing *Gen. Dev. Corp.*, 135 BR at 1007 (holding that plan proposing payment of a municipality's claims in stock and notes despite prohibition by the state constitution on ownership of a corporate stock by a municipality satisfied Section 1129(a)(3)); *Buttonwood Partners,* 111 B.R. at 60 (holding that possible violation of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 did not prevent confirmation of a plan under Section 1129(a)(3)).

This does not mean that the potential illegality of a substantive provision of a reorganization plan is an irrelevant consideration in the confirmation process. Courts have recognized, for example, that "the legal consequences which might flow from the implementation of a substantive provision which is prohibited by law could affect the

plan's feasibility under section 1129(a)(11)." *Food City, Inc.*, 110 B.R. at 812 n.10.  We

take up this issue in detail below in addressing Dr. Buridi's separate contention that the

Bankruptcy Court's confirmation of the KMC and KMCREI Plans was in violation of §

1129(a)(11).  But this is a statutory not a constitutional question.  Simply put, if the

Bankruptcy Court erred, it was not an error of a constitutional magnitude.

### B.    Automatic Post-Confirmation Amendment

Dr. Buridi's next argument is that the language added by the Bankruptcy Court to

address his Rule 9023 motion violates 11 U.S.C. § 1127(b), which requires notice and a

hearing prior to any post-confirmation amendment to a plan of reorganization.

Specifically, Dr. Buridi argues that Paragraph 4 in the KMCREI Plan and Paragraph 5 in

the KMC Plan, in effect, provide that the KMC and KMCREI Plans are automatically

deemed amended and modified post-confirmation if the Exit Investor determines that the

equity distribution to the four named physicians risks violating the federal health care

laws, which Dr. Buridi contends "effectively circumvent[s] full disclosure under 11

U.S.C. section 1125 of the proposed amendment, as well as the notice and hearing due

process requirement that section 1127(b) requires."  Dkt. No. 16 at 27.

It is true that the Bankruptcy Court amended the Plans by including the language

challenged by Dr. Buridi.  But that amendment was made in response to Dr. Buridi's

Rule 9023 motion and following a hearing on that motion.  Accordingly, we do not find

that the Bankruptcy Court's amendment of the Plan through the addition of such

language was in contravention of § 1127(b).  Under § 1127(b), a plan proponent or the

reorganized debtor may modify the plan at any point after confirmation and before

substantial consummation "if circumstances warrant such modification and the court,

after notice and a hearing, confirms such plan as modified, under section 1129 of this

title." *Id.* Here, Dr. Buridi was given both notice and a hearing before the Bankruptcy

Court amended the Plan. Contrary to Dr. Buridi's characterization of the added language,

it does not allow the Plan to be freely amended post-confirmation without compliance

with 11 U.S.C. § 1127(b), but rather simply enables the KMCREI and KMC Plans to be

implemented without requiring further modifications in the event that the equitable

distributions at issue are deemed to risk violating federal health care laws. Therefore, in

our view, the challenged language itself does not even implicate, much less violate §

1127(b) in the manner Dr. Buridi contends.

### C.    Substantive Consolidation

Dr. Buridi argues that the Bankruptcy Court also erred by treating KMCREI's

Chapter 11 bankruptcy case as if it were substantively consolidated with KMC's Chapter

11 case. Here, substantive consolidation was not sought by KMC or KMCREI; the

Bankruptcy Court did not order substantive consolidation, and neither reorganization plan

contained a "deemed consolidation" provision.[3] Dr. Buridi contends that the Bankruptcy

Court nonetheless treated the two cases as substantially consolidated, pointing to the

---

[3] The Bankruptcy Court did keep the KMC and KMCREI cases on a unified schedule for purposes of hearings related to the disclosure statements and plans. But this procedure alone does not show that the Bankruptcy Court treated the cases as substantively consolidated. Moreover, Dr. Buridi never objected to such a procedure and thus has waived any claim related to that conduct.

provision in the Final Confirmation Orders describing the potential distribution of KMCREI's equity interests to Drs. Stevens, Hallal, Campbell, and LaRocca in consideration of the doctors' compromise of their respective Allowed Administrative Claims against KMC as permitted (but not required).

We are not persuaded by Dr. Buridi's argument. First, we note that, although Dr. Buridi's counsel expressed concern during the confirmation process regarding the fact that the four physicians were being offered equity in KMCREI to settle administrative claims against KMC, there is no indication that Dr. Buridi specifically objected to either the KMC Plan or the KMCREI Plan on the basis of a purported consolidation at any point throughout the pendency of the bankruptcy cases. Accordingly, this argument is waived.

Even if not waived, Dr. Buridi has pointed to no authority to support the position that individual creditors' consent to a compromise of particular administrative claims in this manner constitutes a substantive consolidation. Rather, "[s]ubstantive consolidation usually results in, *inter alia*, pooling the assets of, and claims against, the two entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans." *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988) (citation omitted). Here, however, KMC and KMCREI maintained separate assets, had distinct creditor bodies, set forth distinct plans for satisfaction of claims and interests, and solicited votes on separate plans of reorganization.

Moreover, even if the Bankruptcy Court had effected substantive consolidation in this case, Dr. Buridi has failed to establish the impropriety of the Bankruptcy Court's conduct under the facts before us. Substantive consolidation is not addressed in the Bankruptcy Code. Rather, it is an equitable doctrine that "treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities…." *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) (internal citations and quotations omitted). Courts generally hold that substantive consolidation is an "extraordinary remedy" to be used sparingly because of the potential harm to creditors of a more solvent debtor if forced to share equally with creditors of a less solvent debtor. *E.g.*, *In re Doctors Hosp. of Hyde Park, Inc.*, 507 B.R. 558, 707 (Bankr. N.D. Ill. 2013); *In re Archdiocese of Milwaukee*, 483 B.R. 693, 700 (Bankr. E.D. Wis. 2012).

Here, however, Dr. Buridi has failed to show any negative effect or harm he suffered as a result of the purported consolidation. In fact, Dr. Buridi does not dispute that but for the compromise of the administrative claims of the four named physicians, KMC would have been required to disburse additional money or property to satisfy those claims in advance of lower priority unsecured claims such as his. *See* 11 U.S.C. §§ 503(b), 507(a)(2), and 1129(a)(9)(A). Accordingly, Dr. Buridi has failed to establish on the facts before us that the Bankruptcy Court violated the Bankruptcy Code or abused its broad equitable powers by purportedly effecting a substantive consolidation.

### D. Feasibility

Dr. Buridi argues that the Bankruptcy Court confirmed the KMC and KMCREI Plans in contravention of the feasibility requirement of 11 U.S.C. § 1129(a)(11), which requires a determination that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." *Id.* Under Seventh Circuit law, to determine that a plan is feasible, "the bankruptcy court need not find that it is guaranteed to succeed; only a reasonable assurance of commercial viability is required." *Matter of 203 N. La Salle Street Partnership*, 126 F.3d 955, 961-62 (7th Cir. 1997) (internal quotation omitted), *rev'd on other grounds*, 526 U.S. 434 (1999). The feasibility of a plan is a finding of fact reviewed for clear error. *See In re Lewis*, 459 B.R. 281, 290 (N.D. Ill. 2011).

Dr. Buridi argues that the Plans are not feasible under 11 U.S.C. Section 1129(a)(11) because the 20% equity distribution to Drs. Stavens, Hallel, Campbell, and LaRocca is "an apparent contravention scheme of federal healthcare law." Dkt. No. 16 at 45. It is true that courts have recognized that "the legal consequences which might flow from the implementation of a substantive provision which is prohibited by law could affect the plan's feasibility under section 1129(a)(11)." *Food City, Inc.*, 110 B.R. at 812 n.10. However, Dr. Buridi has failed to provide a developed argument explaining how the challenged provision impacts the feasibility, to wit, the ability to fund, the Plan beyond merely citing the possible penalties for violations of the federal healthcare statutes at issue.

Here, at the time of confirmation, the Plans provided sufficient prospects of success to satisfy § 1129(a)(11), particularly considering that the Confirmation Orders provide that distributions should not be made under the Plans if they are deemed by the Exit Investor to be potentially violative of applicable healthcare laws. The Bankruptcy Court's finding that the Plans were feasible at the time of confirmation is only supported by hindsight, given the fact that, today, approximately 20 months into the Plan, the hospital remains open and operational and there are no civil or criminal proceedings pending against KMC or KMCREI based on any of the alleged violations of the healthcare laws about which Dr. Buridi remains concerned. Accordingly, we cannot find that the Bankruptcy Court clearly erred in determining that the Plans satisfied § 1129(a)(11) at the time of confirmation.

## III.    Objection to KMC Plan Based on Modifications to Injunction

Dr. Buridi argues that the Bankruptcy Court erred in allowing what he contends were "material" modifications of the injunction set forth in the KMC Plan. The injunction provides, in relevant part, as follows:

> …[A]ll parties that have held, currently hold or may hold any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities against the Debtor or KMCREI that are compromised, settled or otherwise provided for pursuant to the Plan shall be enjoined from [pursuing collection actions] against the Debtor, its property or any guarantor or co-obligor of the Debtor, and said guarantor's or co-obligor's property, on account of such claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities. …

Dkt. 4-33 at 15. Dr. Buridi objects to the following language added to the injunction the day before the confirmation hearing:

> [I]n the event that any guarantor or co-obligor of the Debtor … commences or continues any action against the Debtor, KMCREI, any equity holder in the reorganized Debtor or KMCREI, or any enjoined Class of claimaint(s) for claims arising prior to the Date of this Confirmation Order, then the injunctions set forth in this Confirmation Order shall automatically terminate and shall not apply to such guarantor or co-obligor and/or their property.

Dkt. 4-33 at 16.

According to Dr. Buridi, the modification is discriminatory because its intent is to prevent him from pursuing a state court lawsuit against Drs. Stavens and Hallel. However, Dr. Buridi has failed to identify any actual cause of action or judgment in his favor that has been enjoined nor has he established that he is under any threat of defending against claims or liabilities that should have been enjoined. Although not entirely clear, it appears he faults the Bankruptcy Court for failing to give him sufficient time to review the modified language, given that the amended language was submitted the day before the confirmation hearing. But Dr. Buridi has failed to point to a provision of the Bankruptcy Code he contends the amended injunction violates or what remedy he seeks. It is not the court's duty to flesh out these arguments for him. For these reasons, we cannot find clear error in the Bankruptcy Court's treatment of the modification to the injunction in the KMC Plan.

## IV. Objection to KMCREI Plan Under 11 U.S.C. § 1129(b)

Section 1129(b) creates an exception to the general rule that a Chapter 11 plan may only be approved if each class of creditors affected by the plan consents by permitting confirmation of nonconsensual or "cramdown" plans if the following two requirements are met: (1) all conditions of § 1129(a) are met (other than § 1129(a)(8), which requires acceptance by each impaired class of claims or interests); and (2) "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). A plan is "fair and equitable" to a dissenting class of impaired unsecured claims if: (1) the allowed value of the claim is to be paid in full, 11 U.S.C. § 1129(b)(2)(B)(i); or (2) "the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of any such junior claim or interest any property," 11 U.S.C. § 1129(b)(2)(B)(ii), which is known as the "absolute priority rule."

Dr. Buridi contends that the equity distribution set forth in the KMCREI Plan violates § 1129(b) because it both discriminates unfairly against him and contravenes the absolute priority rule. We address these arguments in turn below.

## 1. Absolute Priority Rule

Dr. Buridi contends that the Bankruptcy Court's confirmation of the KMCREI Plan was in contravention of the absolute priority rule. The underlying principle of the absolute priority rule is that "[c]reditors in bankruptcy are entitled to full payment before equity investors can receive anything." *In re Castleton Plaza, LP*, 707 F.3d 821, 821 (7th

21

Cir. 2013) (citing 11 U.S.C. § 1129(b)(2)(B)(ii)).  Dr. Buridi maintains that the equity

distribution to Drs. Stavens, Hallel, Campbell, and LaRocca violates the absolute priority

rule.

Dr. Buridi has failed, however, to identify any senior objecting class of claims in

the KMCREI case or any junior class that is retaining equity in KMCREI.  The

confirmation order provides that, "[o]n the Effective Date, holders of Class 4 Interests

shall have their membership [*i.e.*, equity] interests canceled."  Sec. Am. Conf. Order

(KMCREI Plan) at 11.  Accordingly, there is no junior class of claims that will "receive

or retain under the plan on account of any such junior claim or interest any property."  11

U.S.C. § 1129(b)(2)(B)(ii).  Nor did Dr. Buridi show a senior class of creditors who

objected to this treatment.  Accordingly, the Bankruptcy Court was correct in finding that

the absolute priority rule is not implicated in this case.

## 2.    Unfair Discrimination

Dr. Buridi also objects to the 20% equity distribution, arguing that it violates §

1129(b)(1), which requires that the plan "not discriminate unfairly" against a "class of

claims or interests that is impaired under, and has not accepted, the plan."  11 U.S.C. §

1129(b)(1).  Dr. Buridi argues that the KMCREI Plan unfairly discriminates against him

because Drs. Stavens, Hallel, Campbell, and LaRocca may receive distributions of equity

from the Exit Investor post-confirmation, while he will not.  However, as noted above, all

Class 4 interests were canceled as of the Effective Date.  Dr. Buridi has failed to rebut

KMCREI's contention that nothing in the Bankruptcy Code limits the rights of creditors

to transfer or receive non-estate property in this manner, given that the Exit Investor will not be allocating to other parties distributions or dividends from the bankruptcy estate, but new equity in a reorganized entity.

## V.      Conclusion

For the reasons detailed above, the Bankruptcy Court's confirmation of the KMC and KMCREI Plans is <u>AFFIRMED</u>.[4]  Final judgment shall enter accordingly.

IT IS SO ORDERED.


Date: _____05/08/2015_____                    _Sarah Evans Barker_
                                                   SARAH EVANS BARKER, JUDGE
                                                   United States District Court
                                                   Southern District of Indiana

---

[4] We note that confirmation of the Plans does not mean that the Debtors are insulated from subsequent enforcement actions for illegal conduct.  As Dr. Buridi points out, enforcement actions of federal healthcare law violations may be brought by the Department of Health and Human Services or under the False Claims Act.  However, "a rule which requires a court to seek out possible future violations from which confirmation will not shelter the debtor anyway invites advisory rulings and wastes valuable judicial resources." *Food City*, 110 B.R. at 813.  If the offer of equity or the 20% distribution indeed does violate healthcare laws as Dr. Buridi contends, enforcement mechanisms exist to address such a violation.  But Dr. Buridi has failed to show that the Bankruptcy Court erred in its treatment of this issue in the bankruptcy context, which is the basis of the appeal before us.

Distribution:

Laura A. DuVall
OFFICE OF THE U.S. TRUSTEE
101 West Ohio Street
Suite 1000
Indianapolis, IN 46204

Miles S. Apple
PITT & FRANK PSC
milesapple@att.net

David Marcus Cantor
SEILLER WALTERMAN LLC
cantor@derbycitylaw.com

Neil C. Bordy
SEILLER WALTERMAN LLC
bordy@derbycitylaw.com

Tyler R. Yeager
SEILLER WATERMAN LLC
yeager@derbycitylaw.com

David Ralph Krebs
TUCKER HESTER BAKER & KREBS, LLC
dkrebs@thbklaw.com

Bradley J. Buchheit
TUCKER, HESTER, BAKER & KREBS
bbuchheit@thbklaw.com

Courtney E. Chilcote
TUCKER, HESTER, BAKER & KREBS
cchilcote@thbklaw.com